IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SIPPEL DEVELOPMENT CO., INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-46 |
| | ) | |
| WESTERN SURETY COMPANY, | ) | Judge McVerry |
| | ) | Magistrate Judge Hay |
| Defendant. | ) | |

REPORT AND RECOMMENDATION

RECOMMENDATION

It is recommended that summary judgment be granted in favor of the plaintiff and against the defendant on plaintiff's claim for $828,572.47, together with interest, under Change Order No. 2, and that summary judgment be granted in favor of the defendant and against the plaintiff on plaintiff's remaining claims.

REPORT

The following facts are not in dispute. On August 28, 2003, Wal-Mart Stores, Inc. ("Wal-Mart") entered into a contract (the "Contract") with Westra Construction, Inc. ("Westra") to build a Sam's Club (#6327-01) in Niles, Ohio (the "Project"). On September 23, 2003, Western Surety Company ("Western") issued Payment Bond No. 929261985 (the "Payment Bond") for the Project. Westra was the Principal on the Payment Bond, Western was the Surety and Wal-Mart was the Obligee.

On October 20, 2003, Westra entered into a Subcontract Agreement with Sippel Development Co., Inc. ("Sippel") to perform a portion of the work provided for in the prime contract. The work to be performed by Sippel included grading and filling the Project site.

Present on the Project site was an amount of fill material that originally was to be utilized in connection with the Project. However, on December 4, 2003, representatives from Wal-Mart, Westra and Sippel concluded that the on-site fill was unsuitable for use in the Project. Several months passed while Wal-Mart considered various options concerning removal of the unsuitable fill, during which time Sippel's work was idled. On April 29, 2004, Wal-Mart authorized Westra to proceed with the removal of the unsuitable fill for a lump sum price, $828,572.47 of which was to be paid to Sippel for performing the removal.

Sippel removed the unsuitable fill. Thereafter, Sippel demanded payment from Westra on, *inter alia,* Change Order No. 2, *i.e.*, the change in work order pertaining to the fill removal. When Westra failed to make payment, Sippel notified Western of Westra's failure and made a demand upon Western for payment under the Payment Bond.[1] Upon Western's failure to pay, Sippel instituted this lawsuit.

The Court has original jurisdiction of this action based on diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1). Sippel is a Pennsylvania corporation having its principal office at 2412 Rustic Ridge Drive, Sewickley, Pennsylvania. Western is a South Dakota corporation having its principal office at 101 South Phillips Avenue, Sioux Falls, South Dakota. The amount in controversy exceeds $75,000, exclusive of costs and interest.

During the course of the instant suit, Sippel and Western resolved a portion of the claims set forth in Sippel's Complaint. However, there are three claims remaining: (1) Change Order No. 2 for $828,572.47, pertaining to the fill removal; (2) Sippel's Change Order Request No. 15 for $551,700.81, which represents Sippel's claim for the costs of standby labor and idled

---

[1] It appears that Westra ceased business operations in mid-2005 and that at some point its assets were seized and liquidated.

equipment during the approximately four month time period that elapsed while Wal-Mart considered its options concerning the fill removal; and (3) Sippel's claims for attorneys' fees, costs, interest and penalties under the Payment Bond and/or the Pennsylvania Contractor and Subcontractor Payment Act, 73 P.S. § 501.

Presently before the Court are the parties' motions for summary judgment. Sippel has moved for partial summary judgment, Dkt. [75], asserting that it is entitled to judgment as a matter of law on Change Order No. 2 and Change Order Request No. 15. Alternatively, Sippel argues that it is entitled to summary judgment on the issue of liability on the claim under Change Order Request No. 15, with genuine issues of fact remaining as to the amount of damages due thereon. Lastly, Sippel asserts that it is entitled to judgment as a matter of law on the issue of liability on its claim for consequential and/or statutory damages, with genuine issues of fact remaining as to the amount of damages due thereon. Western has moved for summary judgment in its favor and against Sippel on all three of Sippel's claims. Dkt. [79].

***Standard of Review***

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986). The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a *genuine issue for trial*" or the factual record will be taken as presented by

3

the moving party and judgment will be entered as a matter of law. Matsushita Electric Industrial Corp. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), quoting Fed.R.Civ.P. 56(e). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). Thus, it must be determined "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Brown v. Grabowski, 922 F.2d 1097, 1111 (3d Cir. 1990), quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 251-52. In analyzing the record, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. McCarthy v. Recordex Serv.,Inc., 80 F.3d 842, 847 (3d Cir. 1996).

*Discussion*

Under Pennsylvania law, a surety agreement is a contract, the language of which determines the surety's rights and liabilities.[2] Beckwith Machinery Co. v. National Union Fire Ins. Co. of Pittsburgh, 890 A.2d 403, 406 (Pa. Super. 2005). Additionally, "[u]nder Pennsylvania law, 'the liability of a surety is coextensive with that of the principal, and accordingly, a surety is bound to perform whatever may be legally required of its principal.'" North American Specialty Ins. Co. v. Chichester School Distr., 158 F.Supp.2d 468, 471 (E.D.Pa. 2001), quoting Diversified Utilities Sales, Inc. v. Monte Fusco Excavating Contracting Co., Inc., 71 F.R.D. 661, 664 (E.D.Pa.1976). It is equally true that "a surety can be bound only to the extent and in the manner and under the circumstances set forth in his agreement." Reliance Universal, Inc. of

---

[2] It is undisputed that a federal court sitting in diversity must apply state substantive law. Gasperini v. Center for Humanities, Inc., 518 U.S. 415, 427(1996)("Under the Erie [R. Co. v. Tompkins, 304 U.S. 64 (1938)] doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law."). The parties agree that Pennsylvania substantive law applies in this case.

4

Ohio v. Ernest Renda Contracting Company, 454 A.2d 39, 45 (Pa. Super. 1982). "It is the language of the [surety] bond that is determinative of the surety's obligation and not the underlying agreement between the ... contractor and [subcontractor]." Salvino Steel & Iron Works, Inc. v. Fletcher & Sons, Inc., 580 A.2d 853, 856 (Pa. Super. 1990), citing Reliance, supra. Any interpretation of the surety agreement should be undertaken "with the purpose of constructing the intent from all the words and clauses used and taken as a whole, with due regard to the surrounding circumstances." Lite-Air Products, Inc. v. Fidelity & Deposit Co. of Maryland, 437 F.Supp. 801, 802 (E.D.Pa. 1977). It is well-settled that the obligations of a surety under a bond "cannot be extended beyond the plain import of the words used." Miller v. Commercial Elec. Const., Inc., 297 A.2d 487, 488 (Pa. Super. 1982). "Obligations not imposed by the terms of the bond cannot be created by judicial construction or interpretation which extends the terms beyond their normal meaning." Id. "The interpretation of an agreement which is clear and unambiguous [] is for the court. In construing a contract, the agreement must be interpreted as a whole, and the words given their ordinary meaning." Pines Plaza Bowling, Inc. v. Rossview, Inc., 145 A.2d 672, 676 (Pa. 1958)(internal citations omitted). Where the language of the bond "is clear and unambiguous, a court is required to give effect to that language." Canal Ins. Co. v. Underwriters at Lloyd's London, 435 F.3d 431, 435 (3d Cir. 2006).

The pertinent language of the Payment Bond at issue is as follows:

> NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION IS SUCH, that if the Principal [Westra] shall promptly make payment in full to all persons or entities supplying labor, material, supplies, services, utilities and equipment in the prosecution of the work provided for in said Contract and any and all modifications of said Contract that may hereafter be made, and shall indemnify and save harmless said Obligee [Wal-Mart] of and from any and all loss, damage, and expense, including costs and attorneys' fees, which the said Obligee may sustain by reason of Principal's failure to do so, then this obligation shall be null and void; otherwise it shall remain in full force and effect.

5

> * * *
>
> The said Principal and the said Surety agree that this Bond shall inure to the benefit of all persons or entities as supplying labor, material, supplies, utilities and equipment in the prosecution of the work provided for in said Contract, as well as to the Obligee, and that any of such persons or entities may maintain independent actions upon this Bond in the name of the person or entities bringing any such action.

Dkt. [95-4]. With the aforementioned principles in mind, we must determine whether Western is liable under the terms of the Payment Bond on Sippel's remaining claims.

Change Order No. 2

Change Order No. 2 provided that Sippel was to move approximately 34,000 cubic yards of unsuitable soils to a designated location away from the Project site. Dkt. [81-12], p. 1. The labor, materials, supplies, services, utilities and/or equipment to be provided by Sippel and the projected costs therefor were documented in Sippel's proposal. Dkt. [81-12], pp. 2-3. Westra and Wal-Mart agreed that the soil removal would be performed on a lump sum payment basis, that is, that Sippel would be paid the lump sum set forth in its proposal, without regard to the eventual or actual cost of the work:

> This work is to be performed on a lump sum basis. The attachment [Dkt. 81-12, pp. 2-3] is not to be used for unit prices. If the estimate is low [Sippel] eats the cost & likewise if ... the estimate is high ... there will be no deducts.

Change Order No. 2, Dkt. [81-12], p.1. See also e-mail from Wal-Mart to Westra, Dkt. [81-11]("This change order is for a lump sum price.").

Western argues that under the terms of the Payment Bond, Western is not liable to Sippel for the agreed upon lump sum price but only the "actual" cost of labor, materials, supplies, services, utilities and/or equipment expended in prosecution of the work done under Change

6

Order No. 2. Western further argues that it is not liable for any profit that may have been built into Change Order No. 2.

Generally, under a payment bond the surety agrees to discharge the debt of the general contractor to pay all subcontractors and materialmen for their services if the general contractor fails to pay. U.S. v. Daddona, 34 F.3d 163, 165 n.1 (3d Cir. 1994); see also RESTATEMENT (First) of Security, § 82 (1941). In this case, Western agreed to discharge the debt of Westra to pay all subcontractors for their services if Westra failed to pay. The language of the Payment Bond in this case clearly obligates Western to "make payment in full to all persons or entities supplying labor, material, supplies, services, utilities and equipment in the prosecution of the work provided for in [the Contract] and any and all modifications of said Contract that may hereafter be made" upon Westra's failure to do so. Dkt. [95-4]. It is undisputed that Sippel supplied labor, material, supplies, services, utilities and/or equipment to remove the unsuitable fill and did so in prosecution of work under the Contract.[3] It is also undisputed that Westra failed to pay Sippel for this work. Thus, it seems clear that under the terms of the Payment Bond, Western is obligated to discharge Westra's debt to Sippel.

As noted, Western argues that in order to recover on Change Order No. 2, Sippel must prove the "actual" amount of labor, material, supplies, services, utilities and equipment it expended in the prosecution of work provided for in the contract. Dkt. [80], p.19. As support for its argument, but without discussion or analysis, Western cites to the case of General Equipment Mfrs. v. Westfield Ins. Co., 635 A.2d 173, 180 (Pa. Super. 1993). Because General Equipment

---

[3] "A surety is not liable on a bond unless it appears that the work unpaid by the principal was completed pursuant to the contract that the bond purports to cover." General Equipment Mfrs. v. Westfield Ins. Co., 635 A.2d 173, 180 (Pa. Super. 1993)(citations omitted). Jerome Gardocky, Western's senior claims representative, has agreed that the soil removal work commenced following the notice to proceed issued by Wal-Mart and was indeed completed. Deposition of Jerome Gardocky ("Gardocky Dep."), Dkt. [92-7], pp. 375-376.

involved an issue and facts not present in the instant suit, it is not at all clear that the case advances Western's cause.

In General Equipment, the city school board hired the general contractor to renovate a high school. The subcontractor furnished and installed wood casework for the project, performing its work in stages. The subcontractor had performed approximately one-third of its work when the general contractor was dismissed from the project by the school board. At the time of the general contractor's dismissal, the subcontractor had billed the general contractor for the work and materials provided and the general contractor had paid a portion of those bills but refused to pay the balance. The subcontractor then demanded payment of the unpaid balance from the insurance company that issued the payment bond. The insurance company refused to pay. At trial, the subcontractor presented invoices and the testimony of its president that the invoices for the completed work had been sent to the general contractor. The president further testified as to the amount of money that had been billed, paid and remained outstanding. The jury awarded the subcontractor the outstanding balance due.

On appeal, the question was whether the subcontractor was required to show the reasonable cost of completing the work that remained under the subcontract when the general contractor was removed, which sum would then be deducted from the outstanding balance. The Superior Court determined that such proof was required only in situations where a general contractor was wrongfully removed from the project, which was not the case in General Equipment. Accordingly, the Superior Court found that because the subcontractor's only burden was "to prove the amount of labor and materials supplied to the project that remained unpaid" and because the subcontractor had met its burden, the surety's motion for judgment notwithstanding the verdict was properly denied by the trial court. 635 A.2d at 181. The

Superior Court did not address, however, the issue and facts presented here, to wit, whether Sippel may rest on the contract price in order to establish the amount of Western's liability or whether Sippel must demonstrate its "actual" costs for work completed in order to prove liability.

Western's sole disagreement here is that the $828,572.47 figure is an "estimate" of the costs involved and that, under the terms of the Payment Bond, Western is not liable for "estimated" costs but only "actual" costs incurred.[4] Gardocky Dep., Dkt. [92-7], p. 288. The Payment Bond itself, however, does not condition liability on proof of "actual" costs. Rather, the Payment Bond simply states that Westra/Western shall make "payment in full to all persons or entities supplying labor, material, supplies, services, utilities and equipment ..." Western has not cited to - - and we have not found - - any case that has construed this or similar language to require proof of "actual" costs, particularly where the Contract specifically made actual costs irrelevant.

As demonstrated by the case of City of Philadelphia, to Use of Penn Metal Ceiling & Roofing Co. v. Pierson, 66 A.321 (Pa. 1907), the clear obligation of Western is to pay Sippel

---

[4] In response to Sippel's Motion for Partial Summary Judgment, Western also argued that partial summary judgment should be denied on Change Order No. 2 because there exists a genuine issue of material fact concerning whether Wal-Mart approved the work. According to Western, Wal-Mart did not sign Change Order No. 2, which apparently was a requirement of the Contract. Further, Western asserts that Wal-Mart subsequently disputed that the change order should have been issued in the first instance since, in Wal-Mart's view, the work specified in Change Order No. 2 fell within the original scope of the work to be performed under the subcontract between Westra and Sippel. However, Western appears to have abandoned this argument in its own motion for summary judgment. Nevertheless, the disputed fact would be "material" only if Western were claiming that Wal-Mart did not approve Change Order No. 2, thus, it did not become part of the Contract and, hence, any work done by Sippel pursuant to Change Order No. 2 could not constitute work done in prosecution of the Contract – – an argument Western has not made. Moreover, the uncontroverted evidence of record demonstrates that, indeed, Wal-Mart approved Change Order No. 2, see E-mail dated 4/29/04 from Brad Adams at Wal-Mart to Tony Gashie at Westra: "Tony, Consider this a notice to proceed with [the soil removal] ... ." Dkt. [81-10], for the lump sum of $828, 572.47 to be paid to Sippel and $82,857.25 (10% overhead and profit) to be paid to Westra, see E-mail dated 4/30/04 from Brad Adams at Wal-Mart to Dave Myers at Westra: "Dave, This Change Order is for a lump sum price ... Sippel Development Co., Inc. total cost of $828,572.47" Dkt. [81-11].

what Westra agreed to pay as evidenced by the written agreement between Westra and Sippel, that is, the lump sum, without regard to the eventual or actual cost of the soil removal. In Pierson, the surety argued that recovery for work done by the subcontractor could be had only for the market value of the labor and materials, which would exclude any profits included in the contract price. In rejecting this argument, the Pennsylvania Supreme Court held as follows.

> The answer to this is that it is not so written in the bond. The obligation of the [Surety] was not to pay for labor and materials furnished according to their market value any more than it was [the Principal's]. The latter's obligation was to pay "any and all persons, any and all sum or sums of money which may be due for labor and materials furnished," etc. [The Principal] could not have been heard to say in defense of the action that the contract price exceeded the market value of the labor and materials employed; for what was due to the [subcontractor], and therefore recoverable, was such sum as [the Principal] had agreed to pay for the ceiling. No more could the [Surety], for the obligation was the same with respect to each. ... What was due from [the Principal] was the contract price, and it was what was thus due that the [Surety] agreed to pay, if [the Principal] did not.

66 A. at 321-22; see also, Miller v. Commercial Electric Construction, Inc., 297 A.2d 487, 488-89 (Pa. Super. 1972), quoting Pierson, supra. Here, Westra could not have required Sippel to prove its "actual" costs since Westra agreed to the contrary in Change Order No. 2. Thus, Western "cannot be heard to say in defense" that Sippel must prove "actual" costs when Westra (and Wal-Mart) agreed that the eventual or actual cost of the work was irrelevant.[5]

Westra's debt to Sippel is clear and nothing in the Payment Bond allows Western to deny liability for this base obligation of Westra. Ragan v. Tri-County Excavating, Inc., 62 F.3d 501, 515 (3d Cir. 1995). Further, contrary to Western's argument, to the extent that the sum includes profit, Sippel is entitled to it. Pierson, 66 A. at 321-22. Accordingly, summary judgment is

---

[5] Indeed, it is undisputed that Sippel never tracked the cost of removing the 34,000 cubic yards of soil because those costs were irrelevant under the terms of the contract.

properly granted in favor of Sippel and against Western on Sippel's claim for payment of $828,572.47 due Sippel under Change order No. 2.[6]

Sippel's Change Order Request No. 15[7]

Sippel claims that it is also entitled to the sum of $551,700.81, which represents "the costs of standby labor, idle equipment, general conditions, and consequential services furnished to the [Project] from December 2003 to May 2004" while Wal-Mart considered its options concerning the fill removal. Dkt. [80], Exh. I. Sippel has termed this sum "suspension costs." Id.

To the extent that these suspension costs are properly considered as delay damages, they are not recoverable here. Under the terms of the contract between Sippel and Westra, generally additional compensation for any delay was expressly excluded. Dkt. [95-2], p.25. "Since 'the liability of a surety is no greater than (that of) its principal,'" Western cannot be liable for any claim of delay damages since Westra was not liable for them. Exton Drive-In, Inc. v. Home Indemnity Co., 261 A.2d 319, 325 (Pa. 1969), quoting East Crossroads Center, Inc. v. Mellon-Stuart Co., 205 A.2d 865 (Pa. 1965).

Sippel argues that it is entitled nevertheless to recover its suspension costs under what Sippel argues are the broad and unrestricted terms of the Payment Bond. In part, Sippel argues that Western agreed to indemnify Sippel for "any loss, damage, or Liability." Dkt. [76], p. 6. However, the surety agreement specifically indemnifies only the Obligee, here, Wal-Mart:

---

[6] Given the instant recommendation, we do not address Sippel's argument that by virtue of the settlement Western reached with Westra on its claim against Wal-Mart for payment due under Change Order No. 2, Western has agreed that the amount due Sippel on its claim under Change Order No. 2 is $828,572.47.

[7] "Change Order Request No. 15" is itemized in a document entitled "Total Value of Claims," under the heading "Claim 2 Suspension Costs." Dkt. [95-6], Exh. E.

> NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION IS
> SUCH, that if the Principal [Westra] shall promptly make payment in full
> to all persons or entities supplying labor, material, supplies, services,
> utilities and equipment in the prosecution of the work provided for in said
> Contract and any and all modifications of said Contract that may hereafter
> be made, **and shall indemnify and save harmless said Obligee [Wal-
> Mart] of and from any and all loss, damage, and expense, including
> costs and attorneys' fees, which the said Obligee may sustain by
> reason of Principal's failure to do so**, then this obligation shall be null
> and void; otherwise it shall remain in full force and effect.

Dkt. [95-4](emphasis added). In our view, this clause unambiguously states the intent of Westra and Western to indemnify only the Obligee for "any and all loss, damage, and expense, including costs and attorneys' fees." Had the parties intended to obligate themselves to subcontractors, such as Sippel, for such claims, Westra and Western could have included those individuals or entities in this clause. Because Westra and Western did not include any entity other than the Obligee under the Payment Bond, the clear import of this clause is that they did not agree to indemnify Sippel or any other person or entity other than Wal-Mart for "any and all loss, damage, and expense, including costs and attorneys' fees." [8]

Reviewing the whole of the Payment Bond, as we are required to do, Lite-Air, 437 F.Supp. at 802, the final paragraph of the Payment Bond does not alter our view that there was no agreement to indemnify Sippel for any and all claims. The final paragraph states as follows:

> The said Principal and the said Surety agree that this Bond shall inure to
> the benefit of all persons or entities as supplying labor, material, supplies,
> utilities and equipment in the prosecution of the work provided for in said
> Contract, as well as to the Obligee, and that any of such persons or entities
> may maintain independent actions upon this Bond in the name of the
> person or entities bringing any such action.

Dkt. [95-4]. Sippel argues that this "investiture clause" gives Sippel the same status as

---

[8] Nor are we persuaded that Western has admitted that the Payment Bond indemnifies Sippel, as Sippel argues. It seems clear from Mr. Gardocky's testimony that the only entity entitled to indemnification under the Payment Bond is Wal-Mart. Gardocky Dep., Dkt. [92-7], pp. 288-293.

Wal-Mart, that is, to be fully indemnified for any and all losses and damages. In our view, Sippel's interpretation of the phrase "this Bond shall inure to the benefit of all persons or entities as supplying labor, material, supplies, utilities and equipment in the prosecution of the work provided for in said Contract, as well as to the Obligee" as an agreement to indemnify Sippel ignores the previously discussed clause that expressly limited indemnification to the Obligee only. Further, Sippel's interpretation would impermissibly expand the terms of the Payment Bond beyond their normal meaning. Miller, 297 A.2d at 488.

Sippel also argues that because the Payment Bond does not restrict Sippel's recovery to any particular items, and because it does not specifically exclude consequential and statutory damages, Western is liable for all claims Sippel may present. Sippel urges that unless the bond states that claims are limited to or that the surety shall pay only particular damages, then a surety must pay all claims and damages of any kind. This argument ignores settled law that a surety can be bound only "in the manner and under the circumstances set forth in his agreement," Reliance, 454 A.2d at 45, and that obligations not imposed are not to be created by the courts, see Miller, 297 A.2d at 488.[9]

Sippel acknowledges that it has not found a Pennsylvania case that has construed terms of a bond similar to the instant Payment Bond.[10] However, Sippel likens its circumstances to those

---

[9] While Sippel correctly states the rule of construction that obligations of compensated sureties, such as Western, are to be construed liberally, the companion rule that all doubts about the interpretation of those obligations as found in the bond shall be resolved against the surety, applies when the language of the contract is not explicit. Poole v. Great American Ins. Co., 182 A.2d 509, 510 (Pa. 1962). Because we find the language to be explicit, we do not construe it against Western.

[10] Sippel cites to a Florida case, Travelers Indemnity Company v. Housing Authority of the City of Miami, 256 So.2d 230, 232 (Fla. App. 1972). Contrary to Sippel's assertions, the bond language in Travelers is clearly distinguishable from the instant Payment Bond. Under the terms of the Travelers surety bond, the principal and surety "shall indemnify and save harmless the Housing Authority ... against and from all costs, expenses, damages, injury or loss ... and shall promptly pay all just claims ... ." Id. There simply is no analogous language in the surety agreement entered into by Westra and Western.

13

in Com. to Use of Fort Pitt Bridge Works v. Continental Cas. Co., 240 A.2d 493 (Pa. 1968), where the Court found that the surety was liable for the full amount of materials furnished by a subcontractor, including prejudgment interest, where interest was not specifically referenced in the labor and material bond.

Fort Pitt Bridge Works does not advance Sippel's cause, however. Importantly, the surety in that case did not dispute that it was responsible for prejudgment interest on the contractor's debt notwithstanding the fact that the bond language itself made no mention of interest. Indeed, Pennsylvania law provides for recovery of prejudgment interest as a matter of right in contract actions. See Jet-Blast Hydrodemolition Canada, Inc. v. Joseph Paolino and Sons, Inc., 1993 WL 85762, at *2 (E.D. Pa. Mar. 25, 1993), citing Fernandez v. Levin, 548 A.2d 1191, 1193 (Pa. 1988)("For over a century it has been the law of this Commonwealth that the right to interest upon money owing upon contract is a legal right [that] begins at the time payment is withheld after it has been the duty ... to make such payment. ... The award of interest in a contract action is a matter of right regardless of when it is demanded ... or whether it is demanded.")

Rather, the dispute in Fort Pitt Bridge Works centered on whether the surety could be liable for interest prior to the date on which the surety was notified of the principal's default. The Pennsylvania Supreme Court held that interest "was an integral part" of the debt for materials furnished. 240 A.2d at 494. The Court referred to the RESTATEMENT of the Law of Security, § 136, which states in pertinent part as follows:

---

We also note that at least one Pennsylvania trial court has rejected the interpretation Sippel urges here concerning the same bond language. Doran Constr. Co., LLC v. Western Surety Co., Case No. 10916 of 2005, Court of Common Pleas of Lawrence County, Pennsylvania ("But this court finds that the Bond plainly limits those damages to the obligee, Wal-Mart stores, the owner of the project. If there was any intention to obligate itself to a subcontractor, such as Doran, for these types of damages, the subcontractor would have been referenced in the Bond along with the obligee."). Dkt. [95-9].

> . . . the surety's obligation to the creditor is not affected by the creditor's failure to notify him of the principal's default unless such notification is required by the terms of the surety's contract.

The Court found that had the surety wished to limit the amount of interest that would accrue by law the surety could have included in the bond a requirement of notice of the principal's default. In our view, Fort Pitt Bridge Works does not work a recovery of suspension costs, which are not awarded as a matter of right.

Similarly, in Jet-Blast, also cited by Sippel, the court referenced Fort Pitt Bridge Works and found that prejudgment interest was a lawful claim and, therefore, an obligation of the surety who agreed to "pay all lawful claims." Id. at *4. However, we do not interpret Jet-Blast as broadly as Sippel would have us do since, as discussed, prejudgment interest is recoverable under Pennsylvania law as a matter of right even where the bond makes no mention of it. Hence, Jet-Blast's discussion of the bond language "to pay all lawful claims" was not necessary to the determination that prejudgment interest was recoverable.

Nor does Jet-Blast's determination that the surety was liable for the cost of the payment bond premium support Sippel's expansive view of the instant Payment Bond. The bond in Jet-Blast included language that obligated the surety on "all lawful claims of subcontractors ... on account of labor performed and materials and equipment furnished in the performance of said contract, **including the terms and conditions of any guarantee required under the contract** ..." Id. at * 4 (emphasis added). Since the performance bond was a required guarantee for Jet-Blast's performance under the terms of the contract, the surety was liable for the cost of the performance bond premium. In our view, Jet-Blast does not work a recovery of suspension costs which were not specifically included in any language in the Payment Bond that would obligate Western for their payment.

15

Nor do we reach a different conclusion based on Sippel's argument that the "make payment in full" language is yet another "indemnity" clause. The Payment Bond states that Westra "shall promptly make payment in full to all persons or entities supplying labor, material, supplies, services, utilities and equipment in the prosecution of the work provided for in said Contract ..." Sippel would have the Court construe "make payment in full to" as obligating Western to pay any and all claims, losses and damages.[11] Again, Sippel has provided no case authority for its interpretation and in our view, its interpretation impermissibly extends the obligations of the surety "beyond the plain import of the words used in the bond." Miller, 297 A.2d at 488.

Accordingly, absent an expressed intent in the Payment Bond to include suspension or delay costs, Sippel's motion for partial summary judgment for these damages is properly denied. Salvino, 580 A.2d at 856 ("[B]ecause the bond is unambiguous and does not include a delay specification, American as surety is not liable for damages caused by delay."); C. Arena & Co., Inc. v. St. Paul Fire & Marine Ins. Co., 1993 WL 452184, at *4-6 (E.D. Pa., Nov. 3, 1993)(Finding damages for costs incurred as a result of project delays were not recoverable under the terms of the surety bond). Therefore, summary judgment is properly granted in favor of Western and against Sippel on its claim for $551,700.81.

<u>Attorneys' Fees, Costs, Interest and Penalties</u>

As rehearsed, the obligations of a surety are determined by the language of the surety agreement. Beckwith Machinery Co., 890 A.2d at 406. Further, "[o]bligations not imposed by

---

[11] Sippel characterizes the instant Payment Bond as "unrestricted" since it requires "payment in full **to**" as opposed to "restricted" bonds, which Sippel characterizes as those providing payment only "**for** labor, material and equipment." Sippel's attempt to distinguish bonds in this fashion does nothing more than highlight the fact that it is the language of the bond that determines the extent of the surety's obligations. Reliance, 454 A.2d at 45.

the terms of the bond cannot be created by judicial construction or interpretation that extends the terms beyond their normal meaning." Miller, 297 A.2d at 488.

Using the same arguments presented in support of its claim for suspension costs, Sippel asks this Court to construe the terms of the Payment Bond as being sufficiently broad to require Western to pay attorneys' fees and penalties, including statutory damages provided for under the Pennsylvania Contractor and Subcontractor Payment Act (the "Payment Act"), 73 P.S. § 501.

For the same reasons that we rejected Sippel's arguments concerning suspension costs, we find that Western is not obligated to pay attorneys' fees or penalties. There is no language in the Payment Bond from which the Court could properly conclude that Western specifically agreed to undertake these obligations. As discussed previously, under Sippel's interpretation of the Payment Bond, recovery of attorneys' fees and/or penalties would impermissibly extend Western's obligations beyond the plain import of the language of the bond. Moreover, Pennsylvania courts generally do not allow for recovery of attorneys' fees absent agreement by the parties or a statutory entitlement. See Snavely, 594 at 336-37, quoting Fidelity-Philadelphia Trust Co. V. Philadelphia Transp. Co., 173 A.2d 109, 113 (Pa. 1961)("'The settled law of this Commonwealth is that attorneys' fees are recoverable from an adverse party to a cause only when provided for by statute or when clearly agreed to by the parties.'"). Here there is no agreement to pay attorneys' fees or penalties expressed in the Payment Bond and we do not construe "payment in full" or any other language in the bond to encompass them. See Ragan, 62 F.3d at 515 (There is "a clear reluctance on the part of Pennsylvania courts to expand the liability of a surety beyond the base or essential obligations of the contractor. ... In the absence of an express provision in the Bond, we conclude that such additional contractual 'charges,' 'fees' or 'penalties' cannot be

considered 'sums justly due' and hence are not recoverable from a surety under Pennsylvania law.")

Sippel also asks this Court to find that the scope of liability under the Payment Bond "includes the statutory damages provided by the [Payment] Act." Dkt. [90], p. 27. The Payment Act protects subcontractors by requiring contractors to pay the subcontractors once they have performed in accordance with the contract. 73 P.S. § 507(a). Where the contractor fails to make payment within the time specified in the Payment Act, the subcontractor may recover a penalty equal to one percent per month of an amount wrongfully withheld by a contractor. 73 P.S. § 512(a). As well, "the substantially prevailing party" may recover "a reasonable attorney fee ... together with expenses." 73 P.S. § 512(b). Sippel offers no statutory or case authority in support of its argument that it is entitled to Payment Act damages under the Payment Bond here.[12] While the Pennsylvania Supreme Court has not yet interpreted the applicability of the Payment Act to sureties, a member of the Western District of Pennsylvania bench has determined that the Payment Act is not applicable to sureties. R.W. Sidely, Inc. v. U.S. Fidelity & Guar. Co., 319 F.Supp. 2d 554 (W.D.Pa. 2004). In R.W.Sidley, Judge Gibson reviewed the provisions of the Payment Act, including Section 512, and concluded that while the Payment Act plainly permits a

---

[12] Sippel points to the Memorandum Opinion in National Fire Insurance Co. v. Sippel Development Co., C.A. 06-390. In that case, the parties had agreed to binding arbitration and the arbitrator awarded attorneys' fees, interest, penalties and costs. National brought suit to vacate the award of these damages, citing the R.W. Sidley case. The district court refused to vacate the arbitration award. It determined that the award was neither irrational nor evidencing a manifest disregard for the law, defined as encompassing "situations in which it is evident from the record that the arbitrator recognized the applicable law, yet chose to ignore it." Jeffrey M. Brown Associates, Inc. v. Allstar Drywall & Acoustics, Inc., 195 F.Supp.2d 681, 684 (E.D.Pa. 2002)(citation omitted). The arbitrator had not offered any explanation for its decision. The district court did not decide, however, the question of whether the Payment Act applies to sureties but simply noted that R.W. Sidley was not binding precedent and that Pennsylvania law was not well settled on this point such that the arbitrator's award could be deemed to have violated recognized law. Dkt. [92-3]. Thus, we do not find that the National case advances Sippel's cause.

subcontractor to seek penalty payments and attorneys' fees against a contractor, "the plain meaning of ... the Act does not address, or provide for, the recovery of such damages against a surety ..." Id. at 561. We agree.

Accordingly, summary judgment is properly granted in favor of Western and against Sippel on its claims for attorneys' fees and penalties.

III.     CONCLUSION

For the above-stated reasons, summary judgment may be properly granted in favor of the plaintiff and against the defendant on plaintiff's claim for $828,572.47, together with interest, under Change Order No. 2, and summary judgment may be properly granted in favor of the defendant and against the plaintiff on plaintiff's remaining claims.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) & ©), and Local Rule 72.1.4 B, the parties are permitted to file written objections and responses thereto in accordance with the schedule established in the docket entry reflecting the filing of this Report and Recommendation. Failure to timely file objections may constitute waiver of any appellate rights.

        Respectfully submitted,

        /s/  Amy Reynolds Hay
        United States Magistrate Judge

Dated: 25 February, 2008

cc:     Hon. Terrence F. McVerry
        United States District Judge

        All counsel of record by Notice of Electronic Filing